IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MICHELLE SHEFFIELD § | |
| § | |
| v. § | A-11-CA-300-LY |
| § | |
| JOHN DOE 1, Individually and His § | |
| Official Capacity, WILLIAMSON § | |
| COUNTY and the WILLIAMSON § | |
| COUNTY SHERIFF'S DEPARTMENT § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Williamson County's Motion for Summary Judgment (Clerk's Doc. No. 18); Plaintiff's Response to Defendant Williamson County's Motion for Summary Judgment (Clerk's Doc. No. 19); and Defendant Williamson County's Reply in Support of its Motion for Summary Judgment (Clerk's Doc. No. 22).

The undersigned Magistrate Judge submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I.  BACKGROUND**

Plaintiff Michelle Sheffield filed suit on April 14, 2011, against John Doe, individually and in his official capacity, Williamson County, and Williamson County Sheriff's Department. (Clerk's Doc. No. 1).  Sheffield filed her Complaint pursuant to 42 U.S.C.A. § 1983.  Sheffield alleges that on April 14, 2009, she was arrested by Williamson County Sheriff's deputies and transported to the Williamson County Jail.  She contends that shortly after she arrived at the jail, she was assaulted by

a Williamson County deputy (Doe) in a "violent cell," who she alleges pushed Sheffield to the ground, and against a bench, breaking her hip. *Id.* She asserts the following claims against the deputy: (1) excessive force in violation of her Fourth and Fourteenth Amendment rights; (2) summary punishment in violation of her Fourteenth Amendment rights; (3) failure to provide medical aid in violation of her Fourth and Fourteenth Amendment rights; and (4) violations of Eighth Amendment, cruel and unusual punishment. Additionally, Sheffield asserts that Williamson County may be held liable for Doe's actions based on: (1) a policy and procedure of excessive force and cruel and unusual punishment; (2) the failure to adequately train; and (3) the failure to adequately supervise. (Clerk's Doc. No. 1 at 2-6).

Only Williamson County has filed a motion for summary judgment.[1] In the motion, Williamson County contends that the undisputed facts are that Sheffield was arrested on April 14, 2009, and taken to the Williamson County Jail. (Clerk's Doc. No. 18 at 3). Upon arrival, Sheffield was placed in a holding cell, but less than a minute later was moved to a protective cell due to her aggressive behavior toward the other women in the holding cell. The next morning Sheffield was removed from the cell to the infirmary, where she was seen by Dr. Barta, and then shortly thereafter released from custody to Jonathan Lemuel of MHMR and taken to the respite center. *Id.* The entirety of her detention lasted 15 hours, and the events that Sheffield contends led to her broken hip took place during the first 8-9 minutes she was at the jail. See Wilson Aff. at 2-3 (Exhibit A to

---

[1] Plaintiff has apparently never moved to substitute a person in place of John Doe, and thus only Williamson County is a party at this time. It is not clear why this is the case, as it is obvious from the summary judgment evidence that the jailer that Sheffield contends assaulted her is Sgt. James Giles. Regardless, the County notes that Doe is plainly a corrections officer at the Williamson County Jail, and thus to the extent the suit purports to sue "Doe" in his official capacity, the suit should be dismissed as redundant of the claims against the County. The County is correct on this point. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985).

Motion for Summary Judgment) (explaining that Sheffield arrived at the jail at 22:44 hours, and was moved into the protective cell at 22:52).

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The party seeking summary judgment bears the burden of showing that there is an absence of evidence to support the non-movant's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997).  After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor.  *Coleman*, 113 F.3d at 533.  If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue of material fact is presented, and summary judgment is inappropriate.  *Id.*  Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary judgment.  *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir. 1995).  Rather, the nonmoving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case.  *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997).  The standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of

fact could find for the non-moving party based upon the record before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. SECTION 1983 CLAIMS

On the § 1983 claims, Williamson County makes three arguments: (1) Sheffield has failed to show a custom or policy of Williamson County that was the cause of the alleged constitutional violations and it therefore may not be held liable under § 1983; (2) Sheffield has not shown that Williamson County failed to adequately train or supervise its employees, such that the County may be held liable under § 1983;[2] and (3) Sheffield has failed to demonstrate sufficient facts to show excessive force.

**A.     Custom or policy**

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) provides that a municipal entity can only be held liable under § 1983 if the constitutional deprivation resulted from a governmental custom or policy.  The custom need not be formally adopted, however, as the Fifth Circuit has held that an "official policy" may be a persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984).  There must be a clear pattern sufficient to

---

[2]The County's summary judgment evidence includes an expert report setting forth the training that Williamson County provides its law enforcement and corrections officers.  Similar information is set out in the deposition testimony of Williamson County's witnesses. Based on this, the County seeks summary judgment on the failure to train or supervise theory relied upon by Sheffield as one means to hold the County liable under § 1983.  Sheffield does not respond to this argument, and thus has abandoned this liability theory.

conclude that the unconstitutional conduct is directly attributable to the municipality, and isolated unconstitutional actions by municipal employees will almost never trigger liability. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Williamson county contends that it cannot be held liable for any § 1983 violation because the official Williamson County policies in place regarding treatment of arrestees prohibit the use of excessive force, and because both the arresting officer and the jailer at issue were trained and certified law enforcement officers. Thus, it contends that any constitutional violation could not have resulted from any policy of the County. In response, Sheffield has submitted evidence of statements of County deputies on an audio recording, including comments made by a supervising lieutenant, all on the night in question, which suggest that the treatment of detainees at the Williamson County Jail is often inconsistent with the written policies. Clerk's Doc. No. 19 at 4.[3] Among other comments, Lieutenant Garrison stated that if you are involved in an altercation with a Williamson County jail officer, "you're going to get a little butt whipping." *Id.* These statements are corroborated by the deposition testimony of Sergeant Giles and Deputy Brantley. *See* Defendant's Exhibit C at 25, Exhibit D at 60-61. Summary judgment requires the Court to view the facts in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Coleman*, 113 F.3d at 533. This evidence is sufficient to create a fact question for a jury to decide whether Williamson County had a custom or practice—albeit not a written one—that condoned the use of excessive force on detainees. Summary judgment is therefore inappropriate on this claim.

---

[3] The arresting officer did not turn off his dashboard camera after the arrest, and thus the audio transmitted from his body microphone continued to record well after the arrest and while he was at the jail.

### B. Excessive force.

Williamson County alternatively argues that even if it could be held liable for the Plaintiff's injuries under *Monell*, summary judgment is still appropriate because there is no dispute that any force used against Sheffield was not excessive. An excessive force claim is properly brought under § 1983. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). The analysis of an excessive force claim begins with identifying the specific constitutional right allegedly infringed by the application of force. *Id.* Though this sounds easy enough, it is unfortunately far more complicated for a person in Sheffield's situation. The Sixth Circuit has aptly summarized the state of the law regarding which constitutional amendment applies to a person in custody on whom force has been used:

> The Supreme Court has deliberately left undecided the question of ''whether the Fourth Amendment continues to provide protection against deliberate use of excessive force beyond the point at which arrest ends and pretrial detention begins.'' *Graham*, 490 U.S. at 395 n. 10. A circuit split has emerged from this legal ''twilight zone,'' . . . with courts choosing between the Fourth Amendment and the Fourteenth Amendment to protect those arrested without a warrant between the time of arrest and arraignment. The standards of liability for these causes of action vary widely . . . and which amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between.

*Aldini v. Johnson*, 609 F.3d 858, 864-65 (6th Cir. 2010) (footnotes and citations omitted).

There is no question that the governing amendment is the Fourth Amendment when the force at issue is used during an arrest itself. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Indeed, courts in this circuit have applied the Fourth Amendment standard to force used after a person is in custody, but while they are still in a police car for transport to jail. *Whiting v. Tunica County*, 222 F.Supp.2d 809, 823-24 (N.D. Miss. 2002). It is also clear that the Fourteenth Amendment applies to the use of force against someone who is in custody pending a trial. *Graham*, 490 U.S. 396 n. 10. *See also Valencia v. Wiggins*, 981 F.2d 1440, 1443-44 (5th Cir.), *cert. denied,* 509 U.S. 905 (1993). In

6

*Valencia* the Fifth Circuit squarely addressed a portion of the gap left by the Supreme Court in *Graham*, and held:

> We do not believe that the Fourth Amendment provides an appropriate constitutional basis for protecting against deliberate official uses of force occurring, as in this case, *after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention for a significant period of time.

*Id.* However, in *Valencia* the plaintiff had been in pretrial custody for three weeks before the force at issue was used, while here the Plaintiff had been in the jail for a few minutes, and had not been presented to a magistrate. Several circuits have held that the Fourth Amendment continues to set the standard until an arraignment has occurred or a finding of probable cause has been made. *See e.g., Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1197 (9th Cir. 2002); *Barrie v. Grand County*, 119 F.3d 862, 866 (10th Cir. 1997); *Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989); *McDowell v. Rogers*, 863 F.2d 1302, 1306-07 (6th Cir. 1988). Other circuits have concluded that as soon as an arrest is complete, the Fourteenth Amendment applies. *See, e.g.*, *Riley v. Dorton*, 115 F.3d 1159, 1161-64 (4th Cir. 1997) (en banc); *Cotrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996); *Wilkins v. May*, 872 F.2d 190, 192-95 (7th Cir. 1989). The Fifth Circuit has not adopted either bright line rule; indeed, it has noted that the lines between an arrest and a pretrial detention often blur, and their cases have often strayed across these lines and have applied Fourth Amendment standards where the Fourteenth Amendment is more proper, and vice verse. *Petta v. Rivera*, 143 F.3d 895, 912-13 (1998). Given this uncertainty, the Court will analyze the summary judgment evidence under both a Fourth and a Fourteenth Amendment standard.

To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that she was seized. *Graham v. Connor*, 490 U.S. at 388. That is not in dispute here. Next she

7

must show that she suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir.2000).  Only the second and third factors are at issue here.  The summary judgment evidence demonstrates that Sheffield suffered a broken hip, in all likelihood at the jail.[4]  There is also no dispute that Sgt. Giles used force to take Sheffield to the ground in the padded cell.  The question is whether there are any material fact disputes regarding whether that use of force was excessive, and if there is any fact dispute regarding whether the use of force was objectively unreasonable.

Williamson County asserts that Sgt. Giles used the minimal amount of force necessary to place Sheffield back in the cell after her attempt to escape.  Sheffield*,* in her Response points out that Sgt. Giles, in his deposition, cannot explain the need to take Sheffield to the ground, and more importantly, why he did not first give her a verbal direction to remain at the back of the cell.  *See* Defendant's Exhibit D at 40-41.  Further, the Court must view the evidence of what happened in the cell in the context of all of the summary judgment evidence, and in the light most favorable to Sheffield.  This context includes recorded statements—made at virtually the same time as these

---

[4] The evidence regarding the injury is undisputed in the summary judgment record, and is contained in Sheffield's deposition.  In summary, she states that upon Sgt. Giles forcing her to the ground, her hip was pressed into a metal bench, and she immediately felt that she had broken her leg.  She cried out, and continued to cry out, in pain, and requested medical help.  Ultimately, when she was released to a mental health specialist, because she was unable to walk into the halfway house, she was not permitted to remain there and was taken home, where the mental health officer had to use a computer chair to wheel her into her home.  She had to call a friend to take her to the hospital.  After a review of x-rays, an emergency room doctor told Sheffield that she had contusions and released her.  She continued to be unable to walk.  Several hours later the hospital called back and informed her that they had misread the x-rays, and she in fact had a fractured acetabulum (the ball socket of the hip joint).  She returned to the hospital, but was ultimately sent to Brackenridge, as it was the only hospital able to handle an injury of the severity of Sheffield's.  She eventually was forced to have hip replacement surgery, and remains disabled as a result.

events were occurring—of the arresting officer (a former County jail officer), and Williamson County jail officers, making references to the jail as a "gladiator camp," about having once "choked a bitch" to get control of her, and about the fact that if you get out of control in the jail, "you're going to get a little butt whipping." The facts also include that at the time of the events: (1) Sgt. Giles was a 41-year old male 250-pound former marine, and Sheffield was a 5'7" 150-pound 49-year old woman on mental disability; (2) Sgt. Giles testified that he did not fear for his own safety; and (3) the only occupants of the padded cell at the time were Sheffield and Giles with Lt. Garrison standing in the doorway. Sgt. Giles' stated need to take Sheffield to the ground was to prevent her from running out of the cell, but the evidence shows that not only was he between Sheffield and the cell door (and he would appear to be a significant obstacle), but that Lt. Garrison was in the cell doorway herself. It appears clear that there is, at a minimum, a fact question regarding whether any force was necessary to accomplish Giles' stated goal of keeping Sheffield in the cell, much less regarding whether the force used was excessive.

With regard to whether the force used was objectively reasonable, the County submits the expert report of Margo Frazier, in which she opines, among many other things (including several pure conclusions of law), that the force used here was objectively reasonable. But she bases that conclusion on facts that are disputable, and have been disputed. Thus, that opinion alone is not sufficient to support summary judgment. On the Plaintiff's side, Sheffield does not offer any expert testimony. This, however, is not fatal to her claim at this stage. As noted, there is ample evidence in the record from which a fact finder could conclude that an objectively reasonable officer would have chosen to use verbal commands and no force, or at least less force than a take-down, to keep Sheffield in the cell. In short, a fact question remains on the reasonableness of the forced used.

Thus, to the extent the Fourth Amendment standard applies to this case, the County has failed to demonstrate that it is entitled to summary judgment on Sheffield's § 1983 excessive force claim.

The outcome is the same under the Fourteenth Amendment. To prevail on a Fourteenth Amendment excessive force claim, a plaintiff must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but rather was applied maliciously and sadistically with the intention to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7, (1992). Although a showing of "significant injury" is not necessary, the plaintiff must have suffered at least some form of injury that is more than de minimis. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001). The factors the court will consider are: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; and (3) the extent of the injury suffered by the claimant. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Equally relevant is the extent of the threat to safety of the staff and inmates. *Id.* After the Court looks at these factors, inferences may be drawn as to whether the use of force could plausibly have been thought necessary. *Id.* If the force is not necessary, then inferences may be drawn as to whether the force evidenced such wantonness with respect to the unjustified infliction of harm. *Id.* The primary difference between the two standards is that the Fourth Amendment standard requires only an objectively unreasonable use of force, while the Fourteenth Amendment requires proof that the use of force was *subjectively* malicious and intended to cause harm.

Without repeating much of what has already been said, the facts most important to this analysis are the statements made on the audio recording. Not only do those statements indicate a (describing it generously) cavalier attitude toward the use of force, they also indicate a subtle misogyny ("I choked a *bitch*"). All of this evidence could cause a jury to infer that the force was

used with malice or an intent to harm Sheffield. Taken together with the questionable need to use any force, and the extent of Sheffield's injuries. there is enough evidence here to make this an issue that a jury must decide.

Thus, regardless of whether the Court analyzes the case from a Fourth Amendment or Fourteenth Amendment perspective, the Court concludes that Williamson County is not entitled to summary judgment on Sheffield's excessive force claim.[5]

## IV. TEXAS TORT CLAIMS ACT

Sheffield's complaint also purports to make a claim against Williamson County under the Texas Tort Claims Act. The County seeks summary judgment on this claim, contending that it is entitled to sovereign immunity on the claim. Sheffield does not respond to this argument. After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson* 477 U.S. at 250. Sheffield fails to do so, and abandons her TTCA claim. Summary judgment is therefore appropriate on that claim.

## V. JOHN DOE & SHERIFF'S DEPARTMENT

As noted in an earlier footnote, Sheffield also sued a John Doe defendant, presumably because she did not know the identity of the person who she asserts caused her to suffer a broken hip. As also noted, that person's identity is now apparent. Sgt. James Giles is the person who took the Plaintiff to the ground in the padded cell, and he was deposed in this case on April 4, 2012. No motion has been made to make Giles a party, or to substitute him in place of John Doe. As a result, in its motion

---

[5]Having said this, Sheffield also makes an Eighth Amendment claim, which is plainly barred, as the Eighth Amendment only applies once a person is convicted of a crime and in custody serving their sentence. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). Summary judgment should be entered on this claim.

11

Williamson County notes these facts, and argues that Doe should be dismissed because Sheffield failed to timely serve Doe, and further that the statutes of limitation have run on any claims against Doe. Plaintiff does not address this issue in her response.

The Federal Rules of Civil Procedure "do not provide any authority for the joining of fictitious defendants." *Taylor v. Federal Home Loan Bank Bd.*, 661 F. Supp. 1341, 1350 (N.D. Tex. 1986). Federal Rule of Civil Procedure 10(a) provides in relevant part: "Caption; Names of Parties. Every pleading must have a caption . . . . The title of the complaint must name all of the parties." FED. R. CIV. P. 10(a). It is unclear whether Plaintiff's failure to name Giles as a party after discovering his identity is an intentional decision to not make him a party, or an oversight, or something else. Accordingly, to make certain what the Plaintiff's intentions are with regard to Giles, the Court **ORDERS** that within the time period for filing objections to this Report & Recommendation, the Plaintiff **SHOW CAUSE** ti the district judge why the claims against John Doe should not be dismissed.

The County also notes that there is no entity known as the "Williamson County Sheriff's Department," and that the Plaintiff's attempt to sue that entity is flawed. It asks the Court to enter summary judgment dismissing any claims against the Sheriff's Department, contending that because the Sheriff's office is an arm of the County, all such claims are already contained within Sheffield's claim against Williamson County. Sheffield does not respond to this argument. The County is correct on this point, and the Sheriff's Department should be removed as a named defendant. *See, e.g. Darby v. Pasadena Police Department*, 939 F.2d 311, 313 (5th Cir. 1991).

12

## VI. RECOMMENDATION

The undersigned therefore **RECOMMENDS** that the district judge **GRANT IN PART AND DENY IN PART** Williamson County's Motion for Summary Judgment. Specifically, the Court recommends that the motion be **DENIED** with respect to the § 1983 excessive force claim under the Fourth and Fourteenth Amendments based on a Williamson County custom or practice, and **GRANTED** with regard to: (1) Sheffield's excessive force claim against Williamson County based on inadequate training or supervision, (2) Sheffield's Eighth Amendment claim, (3) Sheffield's claim pursuant to the Texas Tort Claims Act, (4) Sheffield's "official capacity" claim against Doe, and (5) Sheffield's claim against the "Williamson County Sheriff's Department."[6]

## VII. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from

---

[6] As noted at the outset, Sheffield's complaint includes a claim that she was denied adequate medical care while in the County's custody. Complaint at ¶¶ 21-26. The claim is based on the County's failure to respond to Sheffield's complaints of pain and injury to her leg until more than 10 hours after she was taken down by Sgt. Giles, and the assertion it did so in an insufficient manner once she was examined. The County does not address this claim anywhere in its motion for summary judgment, and thus this claim will also remain pending should the district judge adopt this Report and Recommendation.

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 18th day of October, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE